## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Buffalo Wild Wings International, Inc.,

                Plaintiff,

vs.

Grand Canyon Equity Partners, LLC;
GCEP-Goodyear, LLC, GCEP-Surprise,
LLC; GCEP-Scottsdale, LLC, David
Agado, Richard Folmar, Michael
Merriman, and Caesar Perez,

                Defendants.

Civil No.:  _____

**COMPLAINT**

---

    Plaintiff Buffalo Wild Wings International, Inc. ("BWW") for its Complaint against the defendants Grand Canyon Equity Partners, LLC ("GCEP"), GCEP Scottsdale, LLC ("GCEP-Scottsdale"), GCEP Goodyear, LLC ("GCEP-Goodyear"), and GCEP Surprise, LLC ("GCEP-Surprise"), David Agado, Richard Folmar, Michael Merriman, and Caesar Perez, alleges as follows:

### THE PARTIES

    1.    BWW is an Ohio corporation with its principal place of business at 5500 Wayzata Boulevard, Suite 1600, Minneapolis, Minnesota 55416.  BWW is the franchisor of 504 restaurants operated under the BUFFALO WILD WINGS® trademarks and franchise system, both of which have been developed by BWW and its affiliates.

    2.    Defendant GCEP is an Arizona limited liability company with its principal place of business at 8300 North Hayden Road #207, Scottsdale, Arizona 85258.  GCEP is

1

a former BUFFALO WILD WINGS® franchise owner, and is the manager of the other defendants.

3.     Defendant GCEP-Scottsdale is an Arizona limited liability company with its principal place of business at 8300 North Hayden Road #207, Scottsdale, Arizona 85258.   GCEP-Scottsdale purports to be the owner of a BUFFALO WILD WINGS® franchise located at 7000 East Mayo Blvd., Suite 1072, Scottsdale, Arizona 85054. BWW's franchise agreement for that location was entered into with GCEP and has terminated, as more specifically alleged below.

4.     Defendant GCEP-Goodyear is an Arizona limited liability company with its principal place of business at 7000 East Mayo Blvd., Suite 1072, Scottsdale, Arizona 85054.  GCEP-Goodyear is a former BUFFALO WILD WINGS® franchise owner.

5.     Defendant GCEP-Surprise (together with GCEP, GCEP-Scottsdale and GCEP-Goodyear, the "GCEP Entities" or "GCEP Defendants") is an Arizona limited liability company with its principal place of business at 8300 North Hayden Road #207, Scottsdale, Arizona 85258.   GCEP-Surprise is a former BUFFALO WILD WINGS® franchise owner.

6.     Defendant David Agado was at all times relevant hereto a guarantor of the obligations of GCEP, GCEP-Goodyear, and GCEP-Surprise under those entities' respective franchise agreements with BWW.  Upon information and belief, and based on his last known address, Agado is a resident of the State of Arizona.

7.     Defendant Richard Folmar was at all times relevant hereto was a guarantor of the obligations of GCEP-Goodyear and GCEP-Surprise under those entities' respective

franchise agreements with BWW.  Upon information and belief, and based on his last known address, Folmar is a resident of Texas.

8.      Defendant Michael Merriman was at all times relevant hereto a guarantor of the obligations of GCEP-Surprise under its franchise agreement with BWW.  Upon information and belief, and based on his last known address, Merriman is a resident of Arizona.

9.      Defendant Caesar Perez (together with Agado, Folmar, and Merriman, the "Guarantors" or "Individual Defendants") was at all times relevant hereto was a guarantor of the obligations of GCEP-Surprise under its franchise agreement with BWW. Upon information and belief, and based on his last known address, Perez is a resident of Arizona.

## VENUE AND JURISDICTION

10.      Jurisdiction in this Court is founded upon 28 U.S.C. § 1331, as Plaintiff pleads violations of 15 U.S.C. §§ 1114(1) and 1125(a).

11.      Jurisdiction in this Court is also proper based upon 28 U.S.C. § 1332(a), as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

12.      Further, personal jurisdiction and venue is proper in this District because the relevant agreements at issue between the parties select Minnesota as the exclusive proper forum for any litigation arising out of or related to the agreements between the parties.

3

**FACTUAL BACKGROUND**

**The BUFFALO WILD WINGS® Franchise System and Trademarks**

13.    BWW has granted franchises for BUFFALO WILD WINGS® restaurants in the United States for approximately twenty years.  During that time, BWW and its affiliates have spent considerable time and resources to develop a business system for video entertainment oriented, fast casual restaurants that feature chicken wings and other products of a distinctive character under the BUFFALO WILD WINGS® Marks and System (as defined below).

14.    BUFFALO WILD WINGS® franchisees are authorized to use federally registered and common law trademarks, trade names, service marks, copyrights, interior and exterior building designs and specifications (including unique motif, décor, and color combinations), slogans, logos and commercial symbols associated with the BUFFALO WILD WINGS® System (as defined below).  A complete list of the asserted trademarks, hereinafter referred to as the BUFFALO WILD WINGS® Marks, is attached to this Complaint as Exhibit A.  Some examples include the following:

| Trademark | Registration Number | Registration Date |
|---|---|---|
| Buffalo Wild Wings Grill & Bar Design  | 3,699,826 | October 20, 2009 |
| Buffalo Wild Wings | 2,239,550 | April 13, 1999 |

| Black Squares on Yellow Background (Trade Dress)  | 2,950,566 | May 10, 2005 |
|---|---|---|
| Wings.  Beer.  Sports. All the essentials. | 2,905,689 | November 30, 2004 |

15.     The current registered owner of the BUFFALO WILD WINGS® Marks noted above is Buffalo Wild Wings, Inc., BWW's parent company.  Buffalo Wild Wings, Inc. licensed BWW the right to use and sublicense the BUFFALO WILD WINGS® Marks pursuant to a License Agreement between BWW and Buffalo Wild Wings, Inc.

16.     In addition to receiving the right to use the BUFFALO WILD WINGS® Marks, franchisees also gain access to the comprehensive BUFFALO WILD WINGS® franchise system (the "System") that details an entire method of doing business.  The System includes, among other things, the unique and distinguishing characteristics and methods for the operation of restaurants, including without limitation, exterior and interior construction designs, menu items, high quality video entertainment, restaurant and kitchen layout, operating methods, services, advertising and promotional materials, marketing techniques, signs, and certain bookkeeping and accounting systems.  The System also includes BWW's secret, confidential and proprietary Manuals, and all other trade secrets, information, know-how, ideas, techniques, research methods, improvements and copyrighted materials, and the goodwill associated with them.  The Manuals cover BWW's operating policies, architectural and construction standards, store operations, food and service quality standards, marketing and advertising policies and standards,

promotional programs, risk management, loss prevention, accounting, and information relating to other business matters.

17.     A central component of the System is the BUFFALO WILD WINGS® Marks. BUFFALO WILD WINGS® customers look for the BUFFALO WILD WINGS® Marks and expect a certain level of service, food, and experience consistent with the System when entering a BUFFALO WILD WINGS® branded restaurant.  BWW has invested substantial effort, including the expenditure of significant sums of money, to develop this goodwill and to cause customers to recognize the BUFFALO WILD WINGS® name.  As BUFFALO WILD WINGS® franchisees, the GCEP Defendants profited from this goodwill.

### The Agreements Between the Parties

18.     On March 23, 2006, GCEP-Goodyear and BWW entered into  a BUFFALO WILD WINGS® Franchise Agreement ("Goodyear Franchise Agreement") (attached as Exhibit C) for a BUFFALO WILD WINGS® restaurant located at 13311 West McDowell Road, Goodyear, Arizona 85338 ("Goodyear Restaurant").  As part of the Goodyear Franchise Agreement, Agado and Folmar each signed a Personal Guaranty and Agreement To Be Bound ("Personal Guaranty"), guaranteeing—personally, unconditionally, and irrevocably—GCEP-Goodyear's obligations under the Goodyear Franchise Agreement.

19.     On October 11, 2007, GCEP-Surprise and BWW entered into a BUFFALO WILD WINGS® Franchise Agreement ("Surprise Franchise Agreement") (attached as Exhibit D) for a BUFFALO WILD WINGS® restaurant located at 13882 West Bell Road, Surprise, Arizona 85258 ("Surprise Restaurant").  As part of the Surprise Franchise

Agreement, Agado, Folmar, Merriman, and Perez each signed a Personal Guaranty, guaranteeing—personally, unconditionally, and irrevocably—GCEP-Surprise's obligations under the Surprise Franchise Agreement.

20.     On January 30, 2004, GCEP and BWW entered into a BUFFALO WILD WINGS® Franchise Agreement ("Phoenix-Scottsdale Franchise Agreement") (attached as Exhibit B) for a BUFFALO WILD WINGS® restaurant located at 7000 East Mayo Blvd. #1072, Phoenix, Arizona 85054 ("Phoenix-Scottsdale Restaurant" and together with the Surprise Restaurant and the Goodyear Restaurant, the "Restaurants").   As part of the Phoenix-Scottsdale Agreement, Agado signed a Personal Guaranty, guaranteeing—personally, unconditionally, and irrevocably—GCEP's obligations under the Phoenix-Scottsdale Franchise Agreement.

21.     While Defendant GCEP-Scottsdale claims that it is the real party in interest regarding the Phoenix-Scottsdale Restaurant, according to BWW's books and records, BWW has no contractual relationship with GCEP-Scottsdale.   GCEP never informed BWW of any transfer of ownership (as required by the Phoenix-Scottsdale Franchise Agreement), and GCEP's automatic electronic fee payments have continued to be drawn from a GCEP account.   (*See* Ex. B, Appendix D.)   Before GCEP could transfer its franchise to another entity, it was required to first offer to sell the franchise to BWW (*see id.* § 11.E), and in any event, BWW's consent (which was never obtained) and various other procedural requirements (which were never accomplished) are required before a transfer can be approved.   (*See id.* §§ 11.)   To the extent that any transfer did occur and it

is upheld, all actions by GCEP during the applicable time period were done on behalf of GCEP-Scottsdale and are imputed to GCEP-Scottsdale.

22.     As part of the consideration for each Franchise Agreement, the GCEP Entities (other than GCEP-Scottsdale, which is not an authorized franchisee) promised to pay BWW a franchise fee, Continuing Fees, and Advertising Fees as described more fully in Sections 8.A and 9.A-C of each Franchise Agreement.  They also promised to accept credit cards, satisfy any judgments entered against them, pay outside vendors in a timely fashion, and generally to act in a manner that protects BWW's goodwill with the general public.  To the extent GCEP-Scottsdale has any rights under the Phoenix-Scottsdale Franchise Agreement, it is likewise bound by such obligations, and all other obligations owed to BWW under the Franchise Agreement.

### BWW's Investment in the GCEP Entities Under the Franchise Agreements

23.     After execution of the Franchise Agreements, BWW provided the GCEP Entities' certified managers with a seven-week initial training program ("Training Program").  During the Training Program, the GCEP Entities' representatives received training on, among other things, the operation of a restaurant consistent with the System.

24.     In addition, BWW provided the GCEP Entities with access to its proprietary Manuals (with GCEP-Scottsdale apparently usurping such access without authorization).  The GCEP Entities also received a recommended business development process, ongoing marketing and promotional support and ongoing planning support for operations, marketing and business planning.  Indeed, the GCEP Entities received all of the benefits of the System including, use of the BUFFALO WILD WINGS® Marks, access

8

to BWW's unique menu items, advertising materials, bookkeeping and accounting system, and approved supplier network.

### BWW's Efforts to Protect Its Information

25.     BWW has invested substantial money, time, and effort developing the System.  This trade secret system is extremely valuable to BWW.

26.     To maintain the confidentiality of its trade secrets and maintain its competitive position, BWW spends substantial time, effort, and money to develop and maintain the confidentiality of its trade secrets.  At the inception of each franchise, BWW requires each franchisee to sign a franchise agreement in which the franchisee acknowledges the nature of BWW's trade secret, proprietary and confidential information, agrees not to disclose that information, and agrees not to compete with BWW during the term of the Franchise Agreement.

27.     Section 6.J of each Franchise Agreement provides the following confidentiality provision:

> You, the Principal Owners, the Unit General Manager, your guarantors, officers, directors, members, managers, partners, employees or agents, or any other individual or entity related to, or controlled by, you may not, during the term of this Agreement or thereafter, disclose, copy, reproduce, sell or use any such information in any other business or in any manner not specifically authorized or approved in advance in writing by us any Confidential Information.  For the purposes of this Agreement, "Confidential Information" means the whole or any portion of know-how, knowledge, methods, specifications, processes, procedures and/or improvements regarding the business that is valuable and secret in the sense that it is not generally known to our competitors and any proprietary information contained in the manuals or otherwise communicated to you in writing, verbally, or through the internet or other online or computer communications, and any other knowledge or know-how concerning the methods of operation of the Restaurant. Any and all Confidential Information, including, without limitation, proprietary ingredients, sauces and mixes, secret formulas and recipes, methods, procedures,

suggested pricing, specifications, processes, materials, techniques and other data, may not be used for any purpose other than operating the Restaurant.

28.    Section 10.D of each Franchise Agreement provides the following post-term non-compete provision:

> You covenant that you will not, for a period of 2 years after the expiration or termination of this Agreement, regardless of the cause of the termination, or within 2 years of the sale of the Restaurant or any interest in you, either directly or indirectly, for yourself, or through, on behalf of, or in conjunction with any person or entity, own, manage, operate, maintain, engage in, consult with or have any interest in (i) a casual or fast casual restaurant that sells or offers to dispense food products the same as or similar to the type sold in BUFFALO WILD WINGS restaurants; (ii) a video entertainment oriented, fast casual restaurant or bar business; or (iii) any business establishment that sells or offers to dispense prepared chicken wings or legs:
>
>     a.  At the premises of the former Restaurant;
>     b.  Within a 5-mile radius of the former Restaurant; or
>     c.  Within a 5-mile radius of the location of any other business or restaurant using the BUFFALO WILD WINGS System, whether franchised or owned by us or our affiliates.

## The GCEP Entities and Guarantors Default on the Franchise Agreements

29.    In late December 2010 and early January 2011, BWW sent the GCEP Entities and Guarantors a series of letters and Notices of Default for failure to pay royalty fees and advertising fees and failure to accept credit cards for a number of days.  (*See* Notices of Default, attached as Exhibit E.)

30.    Because GCEP did not cure the defaults relating to the Phoenix-Scottsdale Restaurant in a timely manner, BWW terminated the Phoenix-Scottsdale Franchise Agreement on February 10, 2011.  (*See* Ex. E.)  BWW allowed GCEP to continue operating while the parties negotiated the closing date for the Phoenix-Scottsdale Restaurant.

31.     On May 26, 2011, BWW informed all GCEP Entities that they were in default for failing to pay royalty fees and advertising fees to BWW and for failing to pay an outside vendor.  Because the Franchise Agreements called for immediate termination for defaults of this nature, BWW immediately terminated the Franchise Agreements. (*See* Notices of Termination, attached as Exhibit F.)

## BWW Negotiates With Defendants to Wind Down Operations of the Restaurants

32.     Following termination of the Franchise Agreements, the parties began negotiations regarding the closure of the Restaurants.

33.     Defendants refused to immediately cease operations of the Restaurants and threatened to file bankruptcy unless they were given an opportunity to sell the Restaurants.

34.     In an effort to preserve brand goodwill by avoiding store closures and the corresponding interruption of service to loyal customers, BWW agreed to provide the GCEP Entities with a limited opportunity to sell the Restaurants, during which they would be allowed to continue operating the Restaurants under temporarily reinstated Franchise Agreements.

35.     The parties entered into an Agreement on July 29, 2011 (the "Limited License Agreement") (attached as Exhibit G), pursuant to which Defendants (with GCEP acting with respect to the Phoenix-Scottsdale Restaurant) were given a limited amount of time to continue operating their Restaurants while attempting to sell their franchises (the "Limited Reinstatement Term").

11

36.     Under the terms of the Limited License Agreement, Defendants (with GCEP acting with respect to the Phoenix-Scottsdale Restaurant) agreed that "the Notices of Default and the Terminations of the Franchise Agreements were valid and proper," that none of them had any right to operate the Restaurants except as specifically set forth in the Limited License Agreement, and that Defendants waived all claims, defenses, counterclaims, or offsets against BWW relating to the Notices of Default or the Terminations of the Franchise Agreements.  (*See* Ex. G at §§ I.C, I.D, I.E.)

37.     The Limited License Agreement stated that "the Franchise Agreements each will automatically expire without further action or notice by BWW effective 12:00 AM on October 20, 2011, and without any opportunity for any renewal or extension thereof."  (Ex. G at II.A.)  The Limited License Agreement further stated that "the sole purpose of the Limited Reinstatement Term is to permit the GCEP Parties to sell or assign their interests in the Phoenix Restaurant, the Goodyear Restaurant and the Surprise Restaurant," and Defendants promised that "they each shall use diligent efforts to sell the Restaurants during the Limited Reinstatement Term[.]"  (Ex. G at I.J, II.A.)

**Defendants Fail to Sell the Restaurants But Continue Operating**

38.     Following execution of the Limited License Agreement, Defendants GCEP-Scottsdale, GCEP-Surprise and GCEP-Goodyear filed for Chapter 11 bankruptcy protection on August 5, 2011.

39.     The GCEP Entities did not sell their franchises during the Limited Reinstatement Term as contemplated by the Limited License Agreement.  Therefore, Defendants' rights to operate the Restaurants as BUFFALO WILD WINGS® franchisees

expired automatically on October 20, 2011.

40.     Prior to October 20, 2011, BWW sent several communications through counsel to Defendants, informing Defendants that the Limited Reinstatement Term was about to expire and that Defendants would no longer have the right to operate the Restaurants after that date.  (Exhibits H-J.)

41.     Despite BWW's repeated reminders that GCEP would need to begin winding down operations as their right to operate was expiring, Defendants ignored BWW's statements.  In fact, Defendants did not cease operation of the Restaurants on October 20, 2011.

42.     On October 28, 2011, BWW instituted an adversary proceeding against the GCEP Entities in the United States Bankruptcy Court for the District of Arizona, Case Number 2:11-AP-01981-JMM.

43.     On October 31, 2011, BWW moved for temporary and preliminary injunctive relief against the GCEP Entities.  The same day, the debtors' attorney filed an application to withdraw.

44.     On November 4, 2011, the Bankruptcy Court entered an Order granting the debtors' attorney's application to withdraw, dismissing the GCEP Entities' bankruptcy case due to the lack of counsel, and therefore dismissing as moot the adversary proceeding and the pending motion for injunctive relief.

**The GCEP Entities' Breaches and Unauthorized Use of the BUFFALO WILD WINGS® Marks**

45.     Despite receiving the various benefits of the System, the GCEP Entities have failed to comply with their contractual obligations under the Franchise Agreements and the Limited License Agreements, as well as their obligations under applicable law.

46.     On October 21, 2011, a BWW agent, Mr. Conrad Skowronski, visited the Restaurants.   During each visit, BWW learned that the GCEP Entities were indeed continuing to operate the Restaurants under the store under the BUFFALO WILD WINGS® Marks and trade dress without BWW's authorization following the expiration of the Limited Reinstatement Term.   During his visits to the Restaurants, Mr. Skowronski photographed the BUFFALO WILD WINGS® Marks and trade dress that had not been removed by the GCEP Entities from the exterior premises of the store though the post-termination obligations set forth in the Franchise Agreements contractually require them to do so.  Mr. Skowronski also ordered menu items and photographed those items as well as the interior of the Phoenix-Scottsdale Restaurant and the Goodyear Restaurant.

47.    As shown in the photographs below, GCEP has failed to remove the BUFFALO WILD WINGS® Marks from the exterior of the Phoenix-Scottsdale Restaurant or cease using the BUFFALO WILD WINGS® Marks in conjunction with goods and services sold by GCEP Parties at the Phoenix-Scottsdale Restaurant:





48.     As shown in the photographs below, GCEP-Goodyear has failed to remove the BUFFALO WILD WINGS® Marks from the exterior of the Goodyear Restaurant or cease using the BUFFALO WILD WINGS® Marks in conjunction with goods and services sold by GCEP-Goodyear at the Goodyear Restaurant:





49.     As shown in the photographs below, GCEP-Surprise has failed to remove the BUFFALO WILD WINGS® Marks from the exterior of the Surprise Restaurant or cease using the BUFFALO WILD WINGS® Marks in conjunction with goods and services sold by GCEP-Surprise at the Surprise Restaurant:

 

50.     On October 23, 2011, three days after the Surprise Restaurant was to cease operations, Mr. Skowronski received e-mail communications from representatives of the Surprise Restaurant informing him that the Surprise Restaurant had a "record sales day" on Saturday, October 22, 2011.  (Exhibit K.)

51.     On October 25, 2011, BWW informed Defendants through counsel that BWW was aware that they had refused to de-identify, that they were continuing to use the BUFFALO WILD WINGS® Marks, and that they were not honoring their post-termination obligations to BWW.  (*See* Exhibit L, attached).   BWW stated that if Defendants did not de-identify, cease use of the BUFFALO WILD WINGS® Marks, and

comply with their post-termination obligations by October 27, 2011, BWW would institute an adversary proceeding. (*Id.*)

52.     On October 28, 2011, Mr. Skowronski again visited the Restaurants and confirmed that Defendants were still operating the Restaurants under the BUFFALO WILD WINGS® Marks and trade dress.

53.     The GCEP Entities have failed to return the materials bearing the BUFFALO WILD WINGS® Marks, the Manuals, and all other materials that they are required to relinquish to BWW following the expiration of the Limited Reinstatement Term contained in Section II.A of the Limited License Agreement.

54.     And, the GCEP Entities continue to operate the Restaurants in the same locations, under the BUFFALO WILD WINGS® name, using the BUFFALO WILD WINGS® Marks, System, Manuals, and other confidential and proprietary information without having satisfied the past due amounts.  Indeed, the GCEP Entities currently owe BWW for outstanding fees, expenses, and costs.

## COUNT ONE
### (15 U.S.C. § 1114(1) – Infringement of Federally Registered Marks)
### (Against All Defendants)

55.     BWW realleges the preceding paragraphs of this Complaint.

56.     BWW is a licensee, through Buffalo Wild Wings, Inc., of the registered BUFFALO WILD WINGS® Marks and has the right to protect the registered BUFFALO WILD WINGS® Marks as well as the goods, services, and business associated with those

BUFFALO WILD WINGS® Marks, including the right to grant franchisees the use of the BUFFALO WILD WINGS® Marks.

57.    Since registration of the BUFFALO WILD WINGS® Marks, BWW and its franchisees have extensively advertised the BUFFALO WILD WINGS® Marks in connection with their products and services.

58.    The GCEP Entities' right to use the BUFFALO WILD WINGS® Marks ceased on October 20, 2011, when the Limited Reinstatement Term contained in the Limited License Agreement expired by its own terms.  Further, GCEP-Scottsdale has never had any rights to use the BUFFALO WILD WINGS® Marks.

59.    Notwithstanding the expiration of the Limited Reinstatement Term on October 20, 2011, the GCEP Entities continue to use and display the BUFFALO WILD WINGS® Marks at the Restaurants in connection with the sale, offering for sale, and advertising of the GCEP Entities' goods and services, and in connection with such use, is causing and is likely to cause confusion, to cause mistake, or to deceive actual and/or prospective customers.

60.    The Defendants' continued use and display of the registered BUFFALO WILD WINGS® Marks for their own benefit, especially in light of the numerous notices and communications BWW has sent regarding the obligation to cease all use of BUFFALO WILD WINGS® Marks, constitutes willful, intentional and bad faith infringement of the BUFFALO WILD WINGS® Marks in violation of 15 U.S.C. § 1114(1).

61.    The Defendants' infringing actions are causing and are likely to cause BWW, the BUFFALO WILD WINGS® Marks, the BUFFALO WILD WINGS® System, and

the public irreparable harm because the Defendants' activities are causing confusion or are likely to cause confusion, or to cause mistake, or to deceive purchasers and others.

62.     BWW has no adequate remedy at law to protect its substantial business and property rights.

63.     BWW is entitled to preliminary and permanent injunctive relief preventing the infringement of the BUFFALO WILD WINGS® Marks.

64.     Because the Defendants' actions are intentional, BWW is also entitled to recover treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT TWO
### (False Designation of Origin – 15 U.S.C. § 1125(a))
### (Against All Defendants)

65.     BWW realleges the preceding paragraphs of this Complaint.

66.     Defendants' unauthorized use of the BUFFALO WILD WINGS® Marks are likely to cause confusion, to cause mistake, or to deceive the consuming public as to the origin, sponsorship, or approval of the Defendants' products and services by BWW.

67.     Defendants' acts constitute false designation of origin, source, or sponsorship and false or misleading descriptions and representations in violation of section 43 of the Lanham Act (15 U.S.C. § 1125(a)).  Such acts were knowing, willful and intentional.

68.     Defendants' unlawful acts have caused and continue to cause BWW to suffer damages in an amount to be proved at trial.  Defendants' unlawful acts have caused

and continue to cause BWW irreparable injury to its business reputation, goodwill, and to the integrity of the BUFFALO WILD WINGS® Marks.

69.     BWW's remedies at law cannot adequately compensate it for the ongoing injuries threatened by the Defendants' continuing conduct.   Unless the Defendants are restrained and enjoined, they will continue to commit unlawful acts, causing BWW to suffer further irreparable injury.

70.     Because the Defendants' infringement is intentional, BWW is entitled to treble damages and reasonable attorneys' fees under 15 U.S.C. § 1117.

## COUNT THREE
### (Violation of Arizona Uniform Trade Secrets Act)
### (Against All Defendants)

71.     BWW realleges the preceding paragraphs of this Complaint.

72.     As a BUFFALO WILD WINGS® franchisee, the GCEP Entities have had access to and/or used BWW confidential and proprietary information, including, but not limited to, the System, the Manuals and BWW operating procedures (collectively "Trade Secrets").

73.     The Trade Secrets have derived and continue to derive independent economic value, both actual and potential, from not being generally known to the public or to other persons who can obtain economic value from their disclosure or use.

74.     The Trade Secrets have been subject to reasonable efforts by BWW to maintain their secrecy, including but not limited to, requiring the GCEP Entities to agree to confidentiality and non-competition provisions (both in-term and post-term).

75.     The GCEP Entities are using such proprietary business information in violation of its duties under the Franchise Agreements to further their own purposes, including competing unfairly against BWW.

76.     Among other things, the GCEP Entities have used, and are continuing to use, the Trade Secrets to operate the Restaurants that are identical to BUFFALO WILD WINGS® restaurants and to thereby solicit current and former customers of BUFFALO WILD WINGS®.

77.     The GCEP Entities knew or had reason to know that they owed a duty to BWW to maintain the confidentiality and limit the use of this proprietary information.

78.     To the extent that GCEP-Scottsdale is operating the Phoenix-Scottsdale Franchise, it is also improperly using the Trade Secrets that are identical to BUFFALO WILD WINGS® restaurants.   Based on its knowledge of the relationship between BWW and GCEP, as well as the terms of the Franchise Agreement, GCEP-Scottsdale had reason to know that the GCEP Entities owed a duty to maintain the confidentiality and limit the use of this proprietary information, and that allowing GCEP-Scottsdale to use it in operation of an unauthorized location was unlawful.

79.     The Defendants are willfully misusing BWW's proprietary information and BUFFALO WILD WINGS® Marks in continuing to operate, without authority, the Restaurants as a competing business.

80.     BWW has suffered, and will continue to suffer, damages as a result of the GCEP Entities' misappropriation of its proprietary information.

81.     As a direct and proximate result of the Defendants' continuing use of BWW's Trade Secrets in violation of the Arizona Uniform Trade Secrets Act, Ariz. Rev. Stat. § 44-401 et seq. (2010), and absent injunctive relief, BWW will continue to suffer irreparable harm, for which there is no adequate remedy at law.

82.     Because the misappropriation is willful and malicious, BWW seeks exemplary damages pursuant to A.R.S. § 44-403(B).

## COUNT FOUR
### (Breach of Contract)
### (Against GCEP Entities)

83.     BWW realleges the preceding paragraphs of this Complaint.

84.     Each Franchise Agreement is a valid contract supported by good and valuable consideration and fully enforceable between the parties.

85.     The Limited License Agreement is a valid contract supported by good and valuable consideration and fully enforceable between the parties.

86.     BWW has performed and complied with its obligations as outlined in the Franchise Agreements.

87.     Pursuant to Section 10.D and 14 of the Franchise Agreements, as modified by the Limited License Agreement, the GCEP Entities agreed to comply with the following obligations upon the termination or expiration of the Franchise Agreements:

    a.     pay BWW for all past due Continuing Fees, Advertising Fees, gift card liability, and liquidated damages;

b.    immediately discontinue all use of the BUFFALO WILD WINGS®

Marks and System;

c.    immediately cease displaying and using, and return to BWW all

copies of the Manuals and any other advertising materials,

confidential materials, proprietary information, and all signs

stationery, letterheads, forms, printed matter, and all electronically

stored data relating to the operation of the Restaurants;

d.    immediately de-identify with BWW by modifying the exterior and

interior of their Restaurants to eliminate the GCEP Entities' former

identification as a BUFFALO WILD WINGS® franchisee, including,

but not limited to, removing all signs that contain the BUFFALO

WILD WINGS® Marks, aimers on the building, all translights, euro

rails, wall graphics, signs and menu boards, and remove or destroy

all BUFFALO WILD WINGS® proprietary merchandise, including

menus, containers, uniforms and other items containing the

BUFFALO WILD WINGS® Marks;

e.    execute and file an assignment of its fictitious business name and

any other similar filings and take such additional actions as may be

necessary to abandon the use of any fictitious business name

containing any of the BUFFALO WILD WINGS® Marks;

f.    refrain from holding itself out as a present or former BUFFALO WILD

WINGS® franchisee;

24

g.      refrain from operating any (1) casual or fast casual restaurant that sells or offers to dispense food products the same as or similar to the type sold in BUFFALO WILD WINGS® restaurants; (2) a video entertainment-oriented fast casual restaurant or bar business; or (3) any business establishment selling or offering to sell prepared chicken wings or legs; and refraining from so operating at the premises of the former Restaurants or within a 5-mile radius of the former Restaurants or any other BUFFALO WILD WINGS® restaurant; and

h.      pay BWW liquidated damages.

88.     Due to Defendants' failure to sell their interests in the Restaurants by October 20, 2011, the Limited License Agreement—and their right to operate the Restaurants—expired according to its own terms on October 20, 2011.

89.     BWW has made a demand upon the GCEP Entities to comply with the post-termination obligations as set forth in the Franchise Agreements, but the GCEP Entities have failed and refused to do so, thereby materially breaching the post-termination obligations and causing harm to BWW.

90.     As a direct and proximate result of the breaches, BWW has been harmed and suffered a loss in an amount to be determined at trial.

## COUNT FIVE
### (Breach of Personal Guaranty)
### (Against Individual Defendants)

91.     BWW realleges the preceding paragraphs of this Complaint.

92.     As required by the Phoenix-Scottsdale Franchise Agreement, and to further induce BWW to enter into the Phoenix-Scottsdale Franchise Agreement, Agado personally guaranteed all of GCEP's obligations to BWW under the Phoenix-Scottsdale Franchise Agreement and Limited License Agreement, including the payment of all indebtedness owed by GCEP to BWW as well as all non-monetary obligations, such as the requirement to de-identify the Restaurant upon termination and comply with all other post-termination obligations.

93.     As required by the Goodyear Franchise Agreement, and to further induce BWW to enter into the Goodyear Franchise Agreement, Agado and Folmar personally guaranteed all of GCEP-Goodyear's obligations to BWW under the Goodyear Franchise Agreement and Limited License Agreement, including the payment of all indebtedness owed by GCEP-Goodyear to BWW as well as all non-monetary obligations, such as the requirement to de-identify the Restaurant upon termination and comply with all other post-termination obligations.

94.     As required by the Surprise Franchise Agreement, and to further induce BWW to enter into the Surprise Franchise Agreement, Agado, Folmar, Merriman, and Perez personally guaranteed all of GCEP-Surprise's obligations to BWW under the Surprise Franchise Agreement and Limited License Agreement, including the payment of all indebtedness owed by GCEP-Surprise to BWW as well as all non-monetary obligations, such as the requirement to de-identify the Restaurant upon termination and comply with all other post-termination obligations.

95.     The Personal Guaranties are valid contracts supported by good and valuable consideration and fully enforceable between the parties.

96.     As a result of the GCEP Entities' material breaches of the Franchise Agreements, Agado, Folmar, Merriman, and Perez owe BWW for the past due Continuing Fees, Advertising Fees, gift card liability, liquidated damages, and any statutory and/or contract interest accumulated on that amount.

97.     Despite having materially breached the Limited License Agreement by failing to sell the Restaurants during the Limited Extension Term, Defendants have refused to pay BWW all past due fees, thereby materially breaching their Personal Guaranties and causing harm to BWW.

98.     BWW has been damaged by the Individual Defendants' breaches of the Personal Guaranties in an amount to be proven at trial.

99.     The Personal Guaranties further require the Individual Defendants to pay any and all attorneys' fees, costs of suit and expenses incurred by BWW in enforcing the Personal Guaranties.  BWW is therefore entitled to recover its attorneys' fees and court costs for its enforcement efforts, including the bringing of this action.

## INJUNCTIVE RELIEF

100.     BWW does not have an adequate remedy at law for the ongoing misconduct of Defendants as set forth above.  The harm to BWW from the continuing misconduct far outweighs any harm to Defendants if they are forced to stop their misconduct, and the public interest is protected by requiring that Defendants live up to their promises and contractual obligations.

101.    Each Franchise Agreement and the Limited License Agreement expressly allows BWW to seek an injunction to enforce provisions relating to the BWW's BUFFALO WILD WINGS® Marks and System or the obligations of Defendants upon termination of the Franchise Agreement and expiration of the Limited License Agreement.  *See* Exs. B-D at § 12.B; Ex. G at § V.E.

102.    BWW is therefore entitled to the requested injunctive relief.

## SPECIFIC PERFORMANCE

103.    BWW is entitled to specific performance of the GCEP Entities' post-termination obligations as delineated in the Franchise Agreements, including Defendants' de-identification of the Restaurants, payment of the past due fees and liquidated damages amounts, and the return of the proprietary materials.  BWW also is entitled to specific performance of the Limited License Agreement, guaranteed by all Defendants.

## ATTORNEYS' FEES

104.    BWW is entitled to an award of attorneys' fees under the statutory authority identified above, A.R.S. §12-341.01(A), and any other applicable statute.  The Franchise Agreements and the Limited License Agreement also entitle BWW to an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, BWW requests the following:

(1)    A preliminary injunction and permanent injunction against Defendants, their agents, and all others in active concert or participation with them as follows:

      a.   Preventing use of BWW's BUFFALO WILD WINGS® Marks or any other mark deceptively similar to BWW's BUFFALO WILD WINGS® Marks; and

      b.   Enforcing all post-termination obligations under the Franchise Agreements and Limited License Agreements.

(2)     An order specifically enforcing the terms of the Franchise Agreements and Limited License Agreement, and entering judgment in BWW's favor and against Defendants for the amounts owed under those agreements.

(3)     Awarding BWW its actual damages associated with Defendants' breaches of the Franchise Agreements and Limited License Agreement, including any applicable special damages.

(4)     Awarding attorneys' fees and costs to BWW.

(5)     Awarding BWW all pre-judgment and post-judgment interest as provided by law and allowed under the terms of the Franchise Agreements and Limited License Agreement.

(6)     Such other relief as the Court may deem just or proper.

Respectfully submitted this 8th day of November, 2011.

**FAEGRE & BENSON LLP**


By /s/   Kerry L. Bundy
Kerry L. Bundy (MN #266917)
*kbundy@faegre.com*
William L. Killion (MN #55700)
*wkillion@faegre.com*
Christopher J.L. Diedrich (MN #0389442)
*cdiedrich@faegre.com*
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402-3901
Telephone: (612) 766-7000

*Attorneys for Plaintiff*